UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| XCALIBER INTERNATIONAL LIMITED, L.L.C., ET AL | CIVIL ACTION |
| VERSUS | NO: 04-0069 |
| RICHARD IEYOUB, ET AL | SECTION: "S" (4) |

### ORDER

Before the Court is a **Motion to Quash Subpoena in a Civil Case (doc. #66)** filed by a third party, the Secretary of the Louisiana Department of Revenue, seeking to quash a subpoena issued by the plaintiff, Xcaliber International Limited, L.L.C. Xcaliber filed an opposition memorandum. The Court heard oral argument on this motion on November 15, 2006.

**I.   Background**

In the mid-1990's Louisiana and other states filed suit against the major tobacco manufacturers seeking to recover medical costs the states incurred because of medical services provided to smokers. The states claimed that tobacco manufacturers had hidden evidence, misrepresented scientific data on the harmful effects of smoking, suppressed the production of safer cigarettes, and unlawfully marketed their products to children.

In 1998 these states signed a Master Settlement Agreement ("MSA") with the four major tobacco manufacturers, Brown & Williamson Tobacco Corporation, Lorillard Tobacco Company, Philip Morris Incorporated, and R.J. Reynolds Tobacco Company ("collectively the "participating manufacturers," or "PM's"). Under the terms of the MSA the participating manufacturers agreed

to make a fixed payment of $4.5 billion in 2000 which increased yearly until reaching $9 billion per year. Each PM was responsible for a certain percentage of the payment based on its market share in the overall market. Each state received a percentage of the payment. Louisiana's share is approximately 2.26%.

The MSA also placed restrictions on lobbying, trade association activities, advertising, and the relinquishment of legal challenges to state laws regulating tobacco. To offset any cost disadvantages to the PM's for signing the MSA and paying into the settlement fund, the states agreed to enact certain legislation requiring those tobacco manufacturers that did not sign the agreement to either (1) sign the MSA and becoming subsequent participating members, ("SPM's) or (2) deposit a specified sum per cigarette sold in the state into an escrow account.

The escrow amount deposited into the state would be released to the state in the event it obtained a judgment against the nonparticipating manufacturer ("NPM") or they reached a settlement. If no judgment was obtained or settlement reached within twenty-five years, the money would be released to the NPM. Louisiana enacted the legislation which contained the following provision relevant to this suit:

> (b) To the extent that a tobacco product manufacturer establishes that **the amount it was required to place into escrow in a particular year was greater than the state's allocable share of the total payments that such manufacturer would have been required to make in that year under the Master Settlement Agreement** (as determined pursuant to section IX(i)(2) of the Master Settlement Agreement, and before any of the adjustments or offsets described in section IX(i)(3) of that agreement other than the inflation adjustment) had it been a participating manufacturer, the excess shall be released from escrow and revert back to such tobacco product manufacturer
>
> LA. REV. STAT. 13:5063(C)(2)(b) (*amended* 2003) (*emphasis added*).

The plaintiff, Xcaliber International, Limited, L.L.C., contends that this provision ensured

2

that monies held in escrow by the state would be limited to the state's allocable share under the MSA. The Attorney General contends that this provision allows those NPM that sell only in a few states to recoup most of the money they place in escrow. For example, if an NPM sells 100% of its tobacco products in Louisiana it is entitled to recoup all of the money placed into escrow except for Louisiana's share under the MSA which is approximately 2.26%.

In 2003, Louisiana amended the statute to read:

[t]o the extent that a tobacco product manufacturer establishes that **the amount it was required to place into escrow on account of units sold in the state in a particular year was greater than the Master Settlement Agreement payments**, as determined pursuant to section IX(i) of that agreement, including after final determination of all adjustments, that such manufacturer would have been required to make on account of such units sold had it been a participating manufacturer, the excess shall be released from escrow and revert back to such tobacco product manufacturer

LA. REV. STAT. 13:5063(C)(2)(b) (emphasis added).

After the amendment, Xcaliber[1] and other NPMs filed the subject lawsuit contending that the amendment eliminates any refund of escrowed payments to the state and that they are required to pay more into escrow than a PM or SPM doing business in Louisiana. Thus, they contend that the object of the amendment is to force them to become a SPM and abide by the rules set down in the MSA and waive their constitutionally protected rights under the First Amendment. The plaintiffs also alleged that this was done to prevent NPMs from competing against PMs thereby preserving and increasing the market shares of the PMs and protecting the payments received by the states under the MSA. The District Court dismissed the plaintiffs' claims against the Attorney General, and Xcaliber appealed the dismissal. The Fifth Circuit reversed the District Court's dismissal and

---

[1]Xcaliber is a tobacco manufacturer selling tobacco products in Louisiana since 2003.

remanded the case. Xcaliber then filed an amended complaint seeking to bring a claim under the Sherman Act.[2]

On October 5, 20006, Xcaliber served a subpoena on the Louisiana Department of Revenue with a return date of seeking information regarding "stick counts"[3] for PMs, SPMs, and NPMs.

## II. Standard of Review

Under Rule 45, a party issuing the subpoena "shall take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(c)(1). The Rule further provides that "the court by which a subpoena was issued shall quash or modify the subpoena if it . . . (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies . . . or (iv) subjects a person to undue burden. FED. R. CIV. P. 45(c)(iii)-(iv).

## III. Analysis

The Department of Revenue contends that Xcaliber seeks information that is confidential and privileged under Louisiana law, specifically Louisiana Revised Statute 47:1508. Therefore it contends that it would be subject to criminal penalties if it discloses the information sought by Xcaliber. During the hearing on this matter, the Department further indicated that producing the documents would be an expensive and burdensome process.

Xcaliber contends that 47:1508.1 allows the production of records sought if the state of Louisiana, or any political subdivision, is a party to the litigation. It contends that because the

---

[2]The Sherman Act prohibits a person, trust, or other combination from conspiring to restrain trade. *See* 15 U.S.C. § 1. It also provides that "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony. *Id.*

[3]A stick count is the number of cigarettes, or ounces of roll your own tobacco, sold by a tobacco manufacturer over a given time period.

4

Attorney General is a party, disclosure is authorized. It further contends that the information it seeks is not the type of taxpayer information the statute is meant to protect. Finally, it contends that because the information is necessary to this case, the Court can order production incident to its power under the supremacy clause.

In this case, the Department of Revenue contends that 47:1508 prohibits the production of the documents. The statute provides that:

> [e]xcept as otherwise provided by law, the records and files of the secretary of the Department of Revenue or the records and files maintained pursuant to a tax ordinance, excluding ad valorem property taxes and ad valorem property tax assessment rolls, of any political subdivision are confidential and privileged, and no person shall divulge or disclose any information obtained from such records and files except in the administration and enforcement of the tax laws of this state or of a political subdivision of this state.

LA REV. STAT. 47:1508 (A)(1). The statute further provides that:

> [n]either the secretary nor any employee engaged in the administration or charged with the custody of any such records or files shall be required to produce any of them for inspection or use in any action or proceeding, except in an action or proceeding in the administration or enforcement of the tax laws of this state or of a political subdivision.

LA REV. STAT. 47:1508 (A)(3).

Thus, under a plain reading of the statute, the Department of Revenue is prohibited from producing any reports unless disclosure falls under one of the exceptions.

Indeed, state courts of appeal have concluded that the statute itself, in the absence of any exception, prohibits the secretary from producing records and files in actions by private parties challenging the enforcement of tax laws. *See e.g. Testa Distributing Company, Inc., v. Tarver*, 584 So.2d 300, 311 (La. App. 1 Cir. 1991) (concluding that in an action challenging the constitutionality of certain exemptions to the beer excise tax, information held by the Department of Revenue about

5

refunds or beer credits given to beer distributors was not discoverable under the statute): *Buras v. State*, 496 So.2d 517, 519 (La. App. 1 Cir. 1986) (concluding that in a mandamus suit seeking records relating to sales tax paid by competing vendors at Jazz Fest, that the specific nature of La. Rev. Stat. 47:1508 trumped the public records law, and thus mandamus was denied). In this case, only one exception is possibly relevant to this action. According to subsection 11, the statute does not prohibit

> [t]he secretary from disclosing to any person upon request the name and address of any registered wholesale tobacco dealer who holds a license or permit to operate within this state, but the secretary shall not disclose any tax data whatsoever with respect to the wholesaler, except for information provided to the tobacco settlement enforcement unit of the Louisiana Department of Justice for the enforcement of Part XIII of Chapter 32 of Title 13 of the Louisiana Revised Statutes of 1950. **The Department of Justice shall not disclose or be required to disclose any information obtained under this Paragraph unless the disclosure is ordered by a court of competent jurisdiction** or agreed upon in writing by the registered wholesale tobacco dealer.

LA REV. STAT. 47:1508 (B)(11) (emphasis added).

Thus, the statute specifically contemplates that the Attorney General, not the Department of Revenue, disclose the information sought by Xcaliber. During the hearing, all parties indicated that the Attorney General possessed the information sought by Xcaliber. The Court then inquired as to whether Xcaliber had requested the information from the Attorney General. Xcaliber conceded that it had not sought the information from the Attorney General.

In this case, the Attorney General is a party to this litigation. The Department of Revenue is not. All parties concede that the Attorney General has the information. Instead of seeking the information from the Attorney General through the appropriate statutory mechanism, Xcaliber sought to burden a non-party to the litigation for the information in a manner contravening state law.

The Court concludes that, in this case, requiring the Department of Revenue, a non-party to the litigation, to produce documents that Xcaliber could just as easily request from the Attorney General, a party to the litigation, would result in an undue burden on the Department of Revenue. Under Rule 45, if the subpoena results in an undue burden, it must be quashed.[4]

Accordingly,

**IT IS ORDERED THAT** the Department of Revenue's **Motion to Quash Subpoena in a Civil Case (doc. #66)** is **GRANTED**.

New Orleans, Louisiana, this 27th day of November 2006

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] In this case, because the Court reaches this result, it is unnecessary to address the remaining arguments of the parties.