UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| **XCALIBER INTERNATIONAL LIMITED, L.L.C., ET AL** | **CIVIL ACTION NO. 04-0069** |
| **VERSUS** | |
| **RICHARD IEYOUB, ET AL** | **SECTION: "S" (4)** |

<u>**MEMORANDUM IN SUPPORT OF
MOTION FOR RECONSIDERATION
OF MAGISTRATE JUDGE'S JULY 3RD ORDER**</u>

On July 3, 2007 this Court ordered Charles C. Foti, Jr., Louisiana's Attorney General ("Attorney General"), to produce unredacted copies of thousands of privileged emails. These emails contain mental impressions, legal advice, and legal opinions from other Attorneys general facing similar litigation.

This is only one of several lawsuits that are pending and have been threatened by tobacco manufacturers arising out of the 1998 Master Settlement Agreement ("MSA") that was entered among states and tobacco manufacturers. In order to effectively defend the tobacco manufacturer challenges to the MSA, the states formed an alliance through the National Association of Attorney General ("NAAG") to coordinate and oversee tobacco related litigation and legal issues throughout the country. Before this Court is but one of many attempts by the tobacco manufacturers to obtain copies of the communications between and among NAAG and the states. Similar attempts recently failed in Kansas and Oklahoma.

Now the tobacco manufacturers are closer than ever obtaining access to these sensitive transmissions. On July 3, 2007, this Court ordered the Attorney General to turn over thousands

271254.1

Now the tobacco manufacturers are closer than ever obtaining access to these sensitive transmissions. On July 3, 2007, this Court ordered the Attorney General to turn over thousands of these upon ruling that the Attorney General waived any privilege or other protection against their disclosure. Due to the sensitive nature of the emails and the potentially damaging effect these emails could have on litigation here and around the country, the Attorney General urges this Court to reconsider its July 3rd Order and instead address the merits of the Attorney General's asserted privileges.

The first part (I) of this memorandum summarizes the background and context in which this discovery dispute arises. Part II describes the privilege log that the Attorney General has generated in compliance with this Court's orders and with Rule 26(b)(5). Part III describes the devastating effect that wholesale disclosure of these documents could have <u>and the dramatic and unforeseeable hardships encountered by the Attorney General in responding to this litigation (including the deployment to Kuwait and sudden death of successive lead counsel assigned to defend this lawsuit</u>.) Part IV addresses the role and applicability of three privileges/protections in the context of this litigation.

## I. Background and Facts

Plaintiff seeks disclosure of a large volume of highly sensitive email transmissions that the Attorney General identifies as privileged or otherwise protected. The large volume of transmissions is the result of overbroad discovery requests – to which the Attorney General repeatedly objected. The Attorney General proffered redacted copies of these emails and unsuccessfully attempted to produce a log that would include additional descriptions. The Attorney General had failed to complete a revised privilege log as ordered by this Court by the time of the July 3, 2007 Order.

271254.1

**The Plaintiff's Request for Production**

Plaintiff's Request for Production contained 20 extremely broad and overlapping categories of documents.[1] The Attorney General was not able to negotiate a more limited production and therefore undertook the daunting task of identifying the mass of responsive email transmissions that are subject to privilege or protection.

The Request for Production is not just extremely broad; much of it also directly focuses on privileged and protected legal strategy and communications concerning ongoing tobacco litigation around the country. Plaintiff is well aware of the NAAG Tobacco Project's central role in providing legal advice and recommendations to the states concerning the MSA (tobacco litigation "Master Settlement Agreement") and related legislation and litigation. Indeed, several of Plaintiff's individual document requests specifically seek communications with NAAG and documents relating to the MSA. See, e.g., Requests for Production numbered 2, 8, 10 and 11. Rec. no. 93-5. As discussed below, Plaintiff separately subpoenaed many of these records from NAAG.

**Previous Efforts to Make the Rule 26(b) Disclosure**

The Attorney General *did* attempt to produce a privilege log in the Fall of 2006. On or about October 7, 2006, the Attorney General produced a 405-page document that identified responsive email transmissions that were subject to one of the three privileges and protections that have been asserted by the Attorney General. Plaintiff returned that log – at the Attorney General's request – when the Attorney General asserted that the privilege log itself was confidential. The confidentiality objection was overcome through a subsequent protective order, Rec. no. 73; however, counsel of record for the Attorney General at that time apparently

---

[1] The Attorney General attempted to negotiate certain limitations on the discovery requests, although such limitations were difficult in light of the very broad scope of the underlying lawsuit. A protective order *was* jointly sought and was granted to address confidentiality issues in November, 2006. Rec. Doc. 93-4.

271254.1

determined that the October 9, 2006 privilege log did not cover the entire period for which documents had been requested and counsel apparently was not confident that the log identified the names of all recipients.[2]  The October 9, 2006 privilege log did not, in any event, include a separate description of the subject matter of each email (other than the "reference" line that appeared on each of the original emails) or a separate statement of the individual privilege(s) claimed for each email.

The November 2006 Order and Production.  The Attorney General *did* produce a substantial number of documents in October and November of 2006; however, no further email production or privilege log was produced as of the date of the November 1, 2006 hearing on Plaintiff's Motion to Compel Production.  This Court entered a ruling following the November 1st hearing that, among other things, ordered the Attorney General to provide a privilege log to Plaintiff.  Order. Rec. no. 71, pp. 7- 8.

The Attorney General produced a number of documents (and two CDs) in response to the November 2006 order; the Attorney General did not, however, produce a document in the form of a "log."  It is respectfully submitted that the Attorney General found it extremely awkward to make the disclosures mandated by Rule 26(b) for each privileged email as a "log" entry. For example, many of the emails had dozens, even hundreds, of recipients -- such that the "recipient" column alone of a traditional log would stretch over several pages for a single email. The Attorney General also believed that the existing "reference" lines on the emails would sufficiently describe the subject matter and would identify the relevant privilege (only three

---

[2] The Attorney General is unable to provide record cites or evidence for this statement.  As noted hereafter, in Part III, counsel for the Attorney General during this time period was called for deployment to Kuwait with virtually no warning on January 17, 2007 (where he remains today), and the successor attorney assigned to assume the role of lead counsel in this litigation for the Attorney General then died suddenly on April 26, 2007.  Affidavit of Gol Hannaman, Exhibit A.

271254.1

privileges have been asserted). The Attorney General counsel at that time apparently believed that it would not be helpful (and might be more confusing) to generate this data in log form.[3]

The Attorney General believed that the Rule 26(b) data could more effectively be presented -- *in this particular case* -- by producing copies of the emails themselves with the privileged communications redacted. Accordingly, in response to this Court's November 2006 Order, the Attorney General produced two CDs. One CD contained unredacted emails that were not privileged. The other CD contained redacted versions of privileged emails.

The text or "body" of the privileged/protected emails was deleted from the produced emails, but the remainder of the emails was produced. Thus, the privileged emails produced on the November 2006 CD did include all the dates, the names of all authors, recipients and copies, the subject matter (as reflected in the reference lines of the original emails), and the presence of any attachments.

The CDs were transmitted to Plaintiff with a November 6, 2006 letter, Rec. no. 93-10. The November 6, 2006 letter details the privileges claimed by the Attorney General on the emails contained on the CDs. Simultaneously, the Attorney General produced a reference document to identify all of the individuals mentioned in the emails on the CDs. Record N. 93-11.

The emails contained on the November 2006 "privilege" CD were subject to one or more of three related and overlapping privileges or protection claims: the attorney-client, the work product, and/or the joint-defense privilege/protection. The Attorney General asserted these privileges and protections in Thomas Enright's November 6, 2006 letter that accompanied the CD production. Rec. no. 93-10 It was the Attorney General's position that the particular

---

[3] Again, the Attorney General must acknowledge that this statement can not be further supported. The attorney who responded to this Court's November, 2006 Order subsequently was deployed to Kuwait, and the attorney who assumed lead responsibility upon his departure died several months thereafter.

271254.1

privilege applicable to any given email in the November 2006 production was essentially apparent from the information that was made available for each individual redacted email.

<u>The April, 2007 Order and the Proferred Descriptions.</u> The November 2006 CD production of privileged emails was deemed inadequate by this Court in its April 11, 2007 ruling. Rec. no. 98. This Court ordered the Attorney General to provide:

> "a privilege log that complies with Rule 26 and will allow Xcaliber to assess whether a privilege or protection applies to withheld documents to Xcaliber and the Court by April 16, 2007 or certify that he is unable to produce a privilege log." Order, April 11, 2007, Rec. No. 98 p.5.

In response to the order, the Attorney General undertook to produce more detailed descriptions of the contents of the individual emails contained in the November 2006 CD.

Plaintiff had emphasized that it required a better "description of the document to which the asserted privilege applies ... ." *See* Plaintiff's Supplemental Memorandum in Support of Motion to Compel, March 12, 2007, page 18, Rec., no. 93-3. In an effort to provide the additional detail sought by Plaintiff, the Attorney General began to produce a more detailed description of the substance of each email. A representative sampling of emails with these additional descriptions was provided to Plaintiff's counsel on or about April 4, 2007. *See* Affidavit of Gol Hannaman, Exhibit A. Attached to Ms. Hannaman's affidavit is a sample of the detail that the Attorney General offered to provide on each of the responsive emails. This sample was provided to Plaintiff on April 4, 2007.

On April 4, 2007, counsel for Plaintiff agreed to review the Attorney General's partial effort and determine whether this would satisfy Plaintiff's request for more detail.[4] If the proffered description had been accepted by Plaintiff, then it was the Attorney General's intent to

---

[4] Plaintiff did not respond to the proposed revised format for email descriptions – pending further guidance from this Court. See Hannaman Affidavit Exhibit A.

271254.1

6

provide the same detail for the entire body of emails subject to the claimed privileges.[5] The Attorney General's undertaking to provide greater detail on <u>all</u> privileged emails, however, was not completed by the April 18, 2007 deadline fixed by this Court. In the April 16, 2007 letter attached to the Court's July 3, 2007 Order, Rec no. 103, the Attorney General acknowledged that he could not produce a further description on all of the remaining emails by the April 18 deadline.[6] The Attorney General <u>did</u> believe that such a log <u>could</u> be produced in due course (and, as set forth in part II below, that further description now <u>has</u> been produced).

Plaintiff is aware, and has been aware, of the categories of email claimed as privileged by the Attorney General. Plaintiff is aware of the subject matter of the emails at issue within the meaning of Rule 26 of the Federal Rules of Civil Procedure. Plaintiff argues that <u>none</u> of these documents could be entitled to privilege or protection. The fundamental dispute is about whether the Attorney General is entitled to assert the claimed privileges or protections to protect the types and categories of emails already have been identified in this case (the categories described in Plaintiff's Request for Production).

## II.     The Attorney General Has Produced a Compliant Log

Notwithstanding the foregoing, the Attorney General understands that, in its April 1, 2007 Order, this Court rejected the Attorney General's efforts to provide the required Federal Rule 26(b)(5) information through the redacted emails in the CD that was produced in November of 2006. This Court instead ordered the production of the Rule 26(b)(5) disclosures in the form of a privilege log. The Attorney General recognizes that he failed to produce the privilege log ordered by the Court on April 11, 2007 by the April 18, 2007 deadline – or by the date of the

---

[5] Id. in fact, as noted below, the Attorney General now <u>has</u> provided this level of description for <u>all</u> responsive emails.

[6] The Attorney General was ordered to produce a privilege log by **April 18, 2007**. As set forth in Part III, below, Assistant Attorney General Stacie deBlieux had just left on maternity leave (**April 1, 2007**) and Assistant Attorney General Wayne Gaudin died suddenly the next week (**April 26, 2007**).

271254.1

July 3, 2007 Order. The Attorney General respectfully submits that this failure was a direct combination of personnel losses resulting from military deployment, maternity leave, and death of the attorneys assigned to critical roles at critical times in defending this action.

**The Attorney General, however, now has produced a privilege log in a form that satisfies this Court's April 11, 2007 Order. That privilege log has been furnished to counsel for Plaintiff.** *See* **Exhibit B, letter to Mr. Keegan, counsel for Plaintiffs.**

The Attorney General submits (in hard copy and electronic form) with this Motion for Reconsideration a privilege log in an Excel format. This document reflects the time and date of each email, the author, and recipient of each email[7] and the identity of every individual who obtained copies of each email. The "reference" line from the original email is included, and each entry on the list discloses whether there were attachments and, if so, the identity of the attachment. In addition, the Attorney General has generated and included a description of the substance of each email, and separately has identified each privilege claimed for each email. Affidavit of Gol Hannaman, Exhibit A.

The Attorney General also has produced the same email data found in the privilege log as individual redacted emails in PST format. This second form of production also contains descriptions of the substance of each email prepared independently by the Attorney General and individually identifies the claimed privileges on each email.

The Attorney General acknowledges that the privilege log that it has produced represents a massive body of data. The Court must realize, however, that the reason for this voluminous response is the breadth of Plaintiff's Request for Production – to which the Attorney General has repeatedly and consistently objected. See, e.g., Rec. no. 93-5. The Attorney General is prepared

---

[7] In order to make the log more readable, the log itself does not contain the names of every recipient to every email. That information is available and has been produced contemporaneously to Plaintiff in the individual PST form at emails delivered to the Plaintiff.

271254.1

and willing to work with Plaintiff to cull out emails that the parties can agree are not relevant or responsive.

### III.   Loss of These Protections Would be Devastating

The Attorney General now has produced a privilege log that identifies the privileges and protections claimed by the Attorney General on all remaining responsive emails. To strip these protections from the Attorney General would seriously erode the legal protections otherwise available to the Attorney General and others who would be affected by that loss. The remedy that would be imposed under this Court's July 3, 2007 ruling would cause enormous hardship - not just to the Louisiana Attorney General, but also to others defending similar and related lawsuits. The Attorney General has endured a series of unforeseeable losses, - particularly the sudden departure to Kuwait of lead counsel on this case, followed several months later by the tragic sudden death of his successor. The Attorney General respectfully suggests that these losses should mitigate the Court's response to the failure to timely produce the privilege log in the form required by the Court. Waiver is Too Harsh a Remedy in this Case.

**Waiver would cause serious hardship.** Waiver of a privilege is a devastating sanction suitable for only cases of unjustified delay, inexcusable conduct, and bad faith.[8] The 1993 advisory committee notes to Rule 26(b)(5) address the sanction of a waiver only where a party withholds materials without proper notice.[9] Acknowledging the harshness of a waiver, courts have reserved such a penalty for only those cases where the offending party acted willfully to

---

[8] *United States v. Philip Morris, Inc.*, 347 F.3d 951 (D.C. Cir. 2003) citing *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F.Supp. 1356, 1361 (D. Kan. 1995) *rev'd on other grounds*, 101 F.3d 645 (10th Cir. 1996).

[9] *Id.*

271254.1

9

cause unjustified delay in responding to discovery.[10] Minor procedural violations, good faith attempts at compliance and other such mitigating circumstances bear against finding waiver.[11]

Plaintiff expressly seeks discovery of legal advice and communications between and among counsel. Indeed, if the Court does not reconsider its July 3, 2007 Order, Plaintiff will obtain disclosure of a significant body of the work product and advice produced by the attorneys working for the NAAG's Tobacco Project. The Tobacco Project was created **in order to address legal issues arising out of** the MSA and related tobacco issues -- including litigation and legislation centered on the allocable shares issue at the core of this lawsuit. Plaintiff thus is seeking access to communications about the strategy and legal advice in responding to this lawsuit and similar lawsuits across the country.

A substantial portion of the communications between NAAG and the State Attorneys General sought by Plaintiff in this case is centered on NAAG's role in coordinating and implementing the enforcement of the MSA on behalf of the attorneys general in the various states  State attorneys general routinely raise legal issues and concerns in implementing and enforcing the MSA, and the NAAG provides legal advice and recommendations to address those identified issues. The state attorneys general frequently seek legal advice from the NAAG, and NAAG frequently provides such advice.

---

[10] *Heavin v. Owens-Corning Fiberglass*, No. 02-2572-KHV-DJW, 2004 WL 316072, *12 (D. Kan. Feb. 3, 2004).

[11] *See, e.g., Heavin*, 2004 WL 316072 at *2 (requiring defendant to amend its privilege log rather than waiving the privilege of the documents and noting that the harsh sanction of waiver should only be applied where there is unjustified delay); *First Sav. Bank* 902 F.Supp. at 1363-1364 (waiver of privilege objection would be an unduly harsh sanction despite defendant's untimely and inadequate privilege log); *In re RFD, Inc.*, 211 B.R. 403, 408-409 (D. Kan. 1997) (bank's failure to provide a privilege log with respect to certain note did not result in a waiver of its privileged status because the bank's actions were reasonable, and not the result of unjustified delay, inexcusable conduct, or bad faith); *Queen's Univ. at Kingston v. Kinedyne Corp.*, 161 F.R.D. 443, 447 (D. Kan. 1995) ("[I]n the instant case, waiver would be an especially harsh sanction ..."); *Godsey v. United States*, 133 F.R.D. 111, 113 (S.D. Miss. 1990) (Though an untimely privilege objection may be waived, "the more advisable and prudent course is to sanction the Plaintiff's attorneys ..."); *Eastern Technologies, Inc. v. Chem-Solv, Inc.*, 128 F.R.D. 74, 75 (E.D. Pa. 1989) ("[G]iven the specific circumstances of this individual case, the failure to object [on the basis of a privilege] is not such a 'flagrant violation' as to warrant 'the harshest sanction.'").

In the instant case, waiver of Defendant's privileges would be an especially harsh sanction. The Attorney General did not refuse to produce information in its entirety; rather, the Attorney General made a series of efforts, including (a) negotiating with Plaintiff's counsel; (b) providing a disk containing copies of emails showing every single author and recipient and the "re" line of each email; and (c) now producing a log that fully complies with the Court's previous orders and FRCP Rule 26(b)(5). The sanction of waiver of a privilege for the failure to timely produce a privilege log is a "draconian remedy" and must be warranted under the specific facts of the case.[12]

In *Stevens v. Omega Protein, Inc.*, this Court declined to impose the "draconia remedy of waiver" for failure to provide a privilege log, instead "requir[ing] Plaintiff to do what he should have already done, i.e., provide the log required by Rule 26(b)(5)."[13] Although the Plaintiff offered no excuse for ignoring the court's order, not even inadvertent error, the court refused to deem privileges waived. Likewise, this District has noted the gravity with which a wavier of privilege can weigh upon a party, even when that party fails to submit any privilege log. Under similar circumstances, this court has refused to deem privileges waived even though it considered a defendant's privilege objection "wholly unsubstantiated" and that defendant neglected to provide privilege logs. The magistrate avoided the harshness wavier imposes "because of the importance of the privileges asserted and the [defendant's] substantial burden required to compile the requisite logs." While the court acknowledged that the rule was mandatory, and even cited to other districts that deemed privilege waived, the Eastern District

---

[12] *See In re Omega Protein Inc.*, No. 2:04-cv-2071, 2007 WL 165494 (W.D. La. Jan. 17, 2007); *Woodland v. Nalco Chemical Co.*, No. Civ. A. 01-3337, 2003 WL 22928808, *4 (E.D. La. Dec. 8, 2003); *Stevens v. Omega Protein, Inc.*, No. Civ. A. 00-3326, 2002 WL 1022507, *3 (E.D. La. May 16, 2002); *Pugh v. J.C. Penney Co., Inc.*, Civil Action No. 95-3846, 1997 WL 39283, *1 (E.D. La. Jan. 30, 1997).

[13] 2002 WL 1022507 at *3.

chose to defer its ruling on waiver and allowed the defendants additional time to offer the court their supplemental logs.

In the District of Columbia case, *Bank v. Office of the Senate Sergeant-at-Arms*, the District Court reversed its sanction order because Defendant's failure to submit a privilege log pursuant to a court order was a result of an inadvertent error and not intentional.[14] The District Court concluded that the sanction of waiver for all of the documents referenced in the privilege log would be disproportionate to the offense.[15]

In *Heaven v. Owens-Corning Fiberglass*, the court found that the defendant was late in providing a privilege log and that the log it provided was inadequate; nevertheless, the court refused to conclude that the defendant had waived any protection for the documents in question. Instead, the court simply ordered the defendant to submit a more detailed log.[16] The court added that it could have found waiver under these facts, but it reserves such a severe sanction only for situations where bad faith is evident.[17]

Wholesale disclosure of the privileged documents would have devastating effects – not just for the Attorney General, but also for the NAAG and for Attorneys general in other states – whose privileged records also would be compromised. By contrast, Plaintiff suffers no significant harm in addressing the claims of privilege that now are before the Court.

When the substantive basis for the privilege asserted by the Attorney General is presented to the Court, the effect of the waiver will be evident. NAAG has contractually undertaken responsibility for coordinating the implementation and enforcement of the tobacco MSA. In that

---

[14] 233 F.R.D. 1, 8 (D. D.C. 2005).

[15] *Id.*

[16] 2004 WL 316072 at *12.

[17] *Id.*

271254.1

role, Attorneys general across the country have routinely sought and received legal advice concerning the MSA and related statutes.

Disclosure of such communications would dramatically undercut the most basic and fundamental intent of the privileges asserted by the Attorney General in this case. Disclosure would chill communication between and among NAAG and the states and would make it difficult or impossible for NAAG to fulfill its obligation to provide legal and related support to the states. All states that are parties to the MSA have shared privileged communications with NAAG. Loss of the confidentiality of these documents risks severely undermining all of these states' litigation positions, and will inhibit NAAG's ability to gather and share such information in the future.

**Mitigating Factors – a Perfect Storm**

The Attorney General acknowledges that he failed to timely produce the privilege log in the form ordered by this Court; however, the Attorney General urges the Court to consider certain mitigating facts, as outlined in the attached Affidavit of Gol Hannaman. It is submitted that the Attorney General encountered a perfect storm of personnel issues in maintaining experienced counsel to defend this action of critical times.

The lead attorney handling this matter for the Attorney General from its inception was Thomas Enright, the Tobacco Section Chief of the Louisiana Department of Justice. Enright had responsibility for all aspects of the lawsuit, including all discovery matters. On January 17, 2007, Mr. Enright notified the Attorney General that he had received military orders to deploy to Kuwait. His last day in the Attorney General's office was January 19, 2007. Mr. Enright remains in Kuwait today.

When Mr. Enright was deployed to Kuwait on an emergency basis, the Attorney General directed W. Wayne Gaudin to assume supervisory authority for the "tobacco issues" litigation being handled by the Attorney General. Mr. Gaudin was the General Liability Section Chief, Litigation Division for the Attorney General. Mr. Gaudin was assigned to act as lead attorney in this lawsuit upon Mr. Enright's deployment to Kuwait. Tragically and unexpectedly, Mr. Gaudin died on April 26, 2007.

In order to fill the breach left by the sudden departure of Mr. Enright, the Attorney General assigned an experienced litigator, Stacie deBlieux, to assume responsibility for this litigation. Ms. Deblieux first became involved in the litigation in an effort to assist Mr. Gaudin only after Mr. Enright left for Kuwait. (She had had no involvement in this lawsuit before January of this year.) Ms. Deblieux, however, had other preexisting commitments and her maternity leave began on April 6, 2007 less than three weeks before Mr. Gaudin's untimely death. Ms. Deblieux returned to the Attorney General's office last month.

The Attorney General does not ask this Court to excuse discovery lapses because of these critical losses and departures. The Attorney General _does_ suggest however, that it is appropriate to consider these circumstances in addressing the Attorney General's failure to timely produce the log ordered by the Court.

**No Prejudice to Xcaliber.** While waiver of these privileges could have devastating effects for the Attorney General, Xcaliber would suffer no prejudice if this Court permits the Attorney General to assert these privileges. Trial is not imminent. Indeed, discovery is ongoing. The Attorney General now has produced a thorough and complete privilege log. Nothing prevents the parties from immediately addressing the discovery issues pertaining to the Attorney General's claim of privilege.

271254.1

Indeed, Plaintiff has been in possession of a list of the core documents, with descriptions and asserted privileges, for over seven months. Plaintiff separately propounded a subpoena for production of many of these email transmissions from NAAG. The NAAG identified and asserted privileges – in this action - for many of the same email transmissions for which the Attorney General has claimed privilege. Most of the email transmissions for which the Attorney General seeks protection involve communications with NAAG.

NAAG objected to production of those email transmissions (on largely the same grounds that have been asserted by the Attorney General). **In response, NAAG also produced a privilege log.** Exhibit C. NAAG's privilege log identifies many of the same transmissions that the Attorney General seeks to protect in these proceedings[18].

NAAG's privilege log clearly disclosed to Plaintiff – many months ago - the factual basis upon which attorney-client, work product, and joint defense privileges and protections were asserted on many of the same transmissions that the Attorney General now seeks to protect. It is evident that, in addition to the Attorney General's past efforts to identify the factual basis for claimed privileges, Plaintiff also has received a clear statement of the basis for the privileges separately articulated and set forth in NAAG's privilege log. Plaintiff is not "unaware" of grounds for the privileges claimed on these transmissions. The basis for the privileges has been clearly articulated by NAAG many months ago (and redacted revisions of the emails had been produced). It now has been clearly articulated by the Attorney General.

---

[18] NAAG's privilege log is not as extensive as the Attorney General's privilege log. This is explained largely by the fact that the Louisiana Attorney General's privilege log includes multiple entries for the same underlying transmissions. That is, a communication subject to privilege might be separately forwarded to multiple parties, and the Attorney General's document management system generated separate privilege log entries for each such transmission.

271254.1

## IV. The Fundamental Privileges and Protections Claimed by the Attorney General are Valid and Critical to these Proceedings

A thorough examination of the privileges and protections claimed by the Attorney General in this case is beyond the scope of this memorandum. That argument will be offered if this Court reconsiders its July 3, 2007 ruling so as to afford the Attorney General an opportunity to argue the substance of those privileges and protections. The Attorney General, however, must emphasize the central rule of the privileges and protections claimed in the context of the litigation.

Attorney – Client  The purpose of attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client". *Upjohn v. United States,* 449 U.S. 383, 389 (1980). "The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Trammel v. United States,* 445 U.S. 40, 51 (1980). *See also United States v. Phillip Morris,* Civl Action No. 99-2496, 2004 W L 1514215 (D.D.C. June 25, 2004).

The core mission of NAAG's Tobacco Project is to provide legal advice and counsel to the states relating to tobacco issues. As counsel, the Tobacco Project's attorneys have advised the states on a variety of legal issues relating to tobacco. By necessity, a large percentage of the Project's internal documents involve privileged communications between attorney and client. All states that are parties to the MSA have shared numerous privileged communications with NAAG. Production of the documents sought by Plaintiff would violate the privileges not only of Louisiana, but of all the States that are parties to the MSA.

271254.1

16

> The attorney-client privilege has deep roots in this country's historical jurisprudence:
>
> "The rule which places the seal of secrecy upon communications between client and attorney is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure."[19]

The attorney-client privilege is "perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system."[20] The attorney-client privilege is so sacred and so compellingly important that the courts must, within their limits, guard it zealously.[21]

Work Product - Many of the documents requested by Plaintiff also are protected by the work product doctrine. Fed. R. Civ. P. 26(b)(3). This provision is the codification of the long standing rule explained by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947). Attorney work product includes "mental impressions, conclusions, opinions or legal theories." Rule 26(b)(3).

At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.[22] The doctrine grants counsel an opportunity to think or prepare a client's case without fear of intrusion by an adversary.[23]

NAAG has assisted the States with litigation relating to the MSA and related to legislation across the country. This litigation comprises literally hundreds of cases in virtually

---

[19] *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888).

[20] *In re Grand Jury Proceedings Grand Jury No. 97-11-8*, 162 F.3d 554, 556 (9th Cir. 1998); *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997).

[21] *Chore-Time Equip., Inc. v. Big Dutchman, Inc.*, 255 F.Supp. 1020, 1021 (W.D. Mich. 1966).

[22] *United States v. Nobles*, 422 U.S. 225, 238 (1975).

[23] *In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2nd Cir. 1992).

every State participating in the MSA. The descriptions of many of the documents in the privilege log clearly demonstrate that they deal with ongoing litigations. Throughout the country, production of such litigation-related materials is plainly work product and should be protected from a compelled disclosure.

<u>Common Interest</u> - Many of the email transmissions are also protected from disclosure by the common interest doctrine. "The common interest privilege protects communications between a lawyer and two or more clients regarding a matter of common interest." *In re Sealed Case*, 29 F.3d 715, 719 (D.C. Cir. 1994); see also *United States vs. Phillip Morris*, 2004 U.S. Dist. LEXIS 27026, at *18 (D.D.C. June 25, 2004) (common interest privilege "permits a client to disclose information to her attorney in the presence of joint parties and their counsel without waiving the attorney-client privilege and is intended to preclude joint parties and their attorneys from disclosing confidential information learned as a consequence of the joint defense without permission") (quoting from the Special Master's recommendation); *United States v. Diabetes Treatment Centers*, No. Civ. 99-3298, 2004 WL 2009413 (D.D.C. May 17, 2004) ("The purpose of the joint prosecution and common interest privileges is to ensure that attorneys feel free to fully and completely prepare for trial by assuring that their legal preparations will not be accessible to an adversary"). Courts have "long recognized the existence of the attorney-client relationship among clients and attorneys in a common legal cause." *Hillerich & Bradsby Co. v. MacKay*, 26 F. Supp. 2d 124, 126 (D.D.C. 1998) (citation omitted.)

NAAG and the Atttorneys General of the various States have a common interest in the enforcement and defense of the MSA and related statutes. In order for the communications at issue in this case to qualify for the common interest privilege, the Attorney General need only show that: (i) the communications were made in the course of a joint defense effort; (ii) the

271254.1

communications were designed to further the effort; and (iii) the privilege has not been waived. *In re Sealed Case,* 29 F.3d at 719. These elements are evidenced by the nature of the communications themselves, and the relationship among the attorneys on NAAG's staff and the Settling States and the Attorneys General.

The integrity of these sacred doctrines must be recognized and preserved. The ramifications of the July 3rd Order are massive. If upheld, this Court's order would waive privileged materials for state Attorneys General throughout United States in all current and future tobacco litigation.

## CONCLUSION

The Attorney General acknowledges that he was not able to produce a privilege log in the form ordered by this Court within the time deadline imposed by this Court. A compliant log now has been produced. Depriving the Attorney General of the right to assert attorney client, work product and common interest privileges/protections under the facts of this case is an extreme remedy that the Attorney General submits is not justified under these facts. The Attorney General urges this Court to reconsider its July 3, 2007 ruling and provide the Attorney General an opportunity to present the substantive grounds for the privileges and protections that he has asserted in order to preserve extremely sensitive documents.

Respectfully submitted,

CHARLES C. FOTI, JR., ATTORNEY GENERAL

/s/ Stacie L. deBlieux
Stacie L. deBlieux, La Bar Roll # 29142
Gol S. Hannaman, La Bar Roll # 29421
Assistant Attorneys General
*Louisiana Department Of Justice*
Post Office Box 94005
Baton Rouge, Louisiana 70804-9005
Telephone: (225) 326-6000

and

Richard A. Curry, La Bar Roll 4671
M. Brent Hicks, La Bar Roll 23778
*McGlinchey Stafford, PLLC*
14th Floor, One American Place
Baton Rouge, Louisiana 70825
Telephone: (225) 383-9000
*Attorneys for Attorney General State of Louisiana*

## CERTIFICATE OF SERVICE

**I CERTIFY** that a copy of this pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to L. Rand Dennis, Esq., Thomas L. Enright, Jr., Esq., J. Brian Juban, Esq., Kyle Melbourne Keegan, Esq., and Stacie L. deBlieux, Esq., by operation of the court's electronic filing system.

Baton Rouge, Louisiana, this 16th day of July, 2007.

/s/ Stacie L. deBlieux
Stacie L. deBlieux